1

2

3

4

5

6

7

8

9               IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11   WILLIAM ROACH,

12        Petitioner,                    No. CIV S-07-997 GEB CHS P

13        vs.

14   CURRY, Warden, et al.,

15        Respondents.        FINDINGS AND RECOMMENDATIONS

16   _____/

17                    I.  INTRODUCTION

18          Petitioner William Roach is a state prisoner proceeding pro se with a petition for

19   writ of habeas corpus brought pursuant to 28 U.S.C. §2254.[1]  Petitioner stands convicted of

20   recklessly driving under the influence, hit and run, and various other offenses.  In the pending

21   petition, he challenges the constitutionality of those convictions.  Petitioner makes several claims

22   of prosecutorial misconduct and further alleges that he received ineffective assistance of counsel

23   prior to and during trial and at his motion for a new trial.

24   /////

25   _____

26       [1] Petitioner is proceeding on his original petition filed on 5/25/07 and amendment of
10/14/09.

1

## II. BACKGROUND

As set forth in the unpublished opinion of the California Court of Appeal, Third District, the following evidence was adduced at petitioner's trial:

On the morning of February 2, 2002, Hamayak Simon Rostami was working as a cab driver, waiting for his next fare outside the Sacramento International Airport. As defendant got in the cab, Rostami placed his bag in the trunk. During the cab ride, defendant asked Rostami if he was a "highjacker" [sic] and an "Arab." Rostami noted the smell of alcohol in his cab. Eventually they reached defendant's apartment complex. The fare was $42. Rostami removed the bag from the trunk and handed it to defendant. Defendant refused to pay and asked Rostami whether he wanted $42 or a punch in the face.

Defendant walked away towards his apartment. Rostami followed him on foot about 50 feet behind. Defendant began throwing cobblestones toward Rostami. Dennis Rosos, a resident of the complex, observed the defendant shouting profanities and throwing cobblestones at the cab driver. Rostami asked Rosos to call 9-1-1. Defendant quickly walked away and disappeared behind some buildings.

Rosos was still on the phone with 9-1-1 when he turned and saw defendant leave the parking lot in a white van. Defendant ran a red light, speeding down the street towards a 7-Eleven. Rosos followed defendant in his car into the 7-Eleven parking lot.

J. James Alarcon was using the pay phone in front of the 7-Eleven store that morning. Alarcon made eye contact with defendant as defendant pulled into the parking lot. Defendant smiled at Alarcon, accelerated over a parking barrier and a handicapped blocker, and hit Alarcon, pinning him against a wall. Alarcon felt like his leg had been ripped off. He recalled, "[E]ven when [defendant] had me against the wall he was still smiling."

Witnesses tried to stop defendant from leaving the parking lot by yelling, banging on the window and opening the van door, but to no avail. Defendant backed up, drove out of the lot, and returned to his apartment complex. Rosos followed.

Sacramento City Police Officer Janine LaRose responded to two different dispatches concerning an assault with a deadly weapon and a hit and run. When LaRose came into contact with defendant, he was staggering, smelled of alcohol and was difficult to understand. Rostami and other witnesses identified defendant. Defendant refused to take a chemical blood alcohol test. A forced blood draw was administered, revealing that defendant had a blood alcohol content of .30.

1         Alarcon suffered a severe crush injury to his right leg.  His doctor
2         subsequently diagnosed the injury as permanent.

3 (C043574 opinion on rehearing[2] at 3-4.)  Petitioner was convicted of recklessly driving under the

4 influence and causing bodily injury (two counts), assault with a deadly weapon, hit and run

5 causing serious and permanent injury, and simple assault.  The jury also found true allegations

6 that he had a prior conviction for which he served a prison sentence and that he personally

7 inflicted great bodily harm on the assault with a deadly weapon charge.  A sentence of seven

8 years, eight months in state prison was imposed.

9         III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

10         An application for writ of habeas corpus by a person in custody under judgment of

11 a state court can be granted only for violations of the Constitution or laws of the United States.

12 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

13 *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

14 This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

15 the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

16 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

17 AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

18 state court proceedings unless the state court's adjudication of the claim:

19             (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
20             determined by the Supreme Court of the United States; or

21             (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
22             State court proceeding.

23 28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

24 *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

25

26     [2] Lodged document 2.

1    The "contrary to" and "unreasonable application" clauses of §2254(d)(1) are

2    different.  Under the "contrary to" clause of §2254(d)(1), a federal habeas court may grant the

3    writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court

4    on a question of law or if the state court decides the case differently than the Supreme Court has

5    on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405.  As the Third Circuit

6    has explained, "it is not sufficient for the petitioner to show merely that his interpretation of

7    Supreme Court precedent is more plausible than the state court's; rather, the petitioner must

8    demonstrate that Supreme Court precedent *requires* the contrary outcome."  *Matteo v.*

9    *Superintendent*, *SCI Albion*, 171 F.3d 877, 888 (3rd Cir. 1999) (emphasis in original).  It is not

10   required that the state court cite the specific controlling test or Supreme Court authority, so long

11   as neither the reasoning nor the result contradict same.  *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

12   The court may grant relief under the "unreasonable application" clause if the state

13   court correctly identifies the governing legal principle but unreasonably applies it to the facts of

14   the particular case.  *Williams*, 529 U.S. at 410.  The focus of this inquiry is whether the state

15   court's application of clearly established federal law is objectively unreasonable.  *Id*.  "[A]

16   federal habeas court may not issue the writ simply because that court concludes in its

17   independent judgment that the relevant state-court decision applied clearly established federal

18   law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*.

19   The court will look to the last reasoned state court decision in determining

20   whether the law applied to a particular claim by the state courts was contrary to the law set forth

21   in the cases of the United States Supreme Court or whether an unreasonable application of such

22   law has occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S.

23   919 (2003).  A court may deny a petition for writ of habeas corpus on the ground that relief is

24   precluded by 28 U.S.C. §2254(d) without addressing the merits of the claim.  *Lockyer v.*

25   *Andrade*, 538 U.S. 63, 71 (2003).

26   /////

4

IV.  CLAIMS PRESENTED

The petition sets forth six distinct grounds for relief.  Petitioner contends that (A) the prosecutor suppressed exculpatory evidence prior to the preliminary hearing; (B) the prosecutor committed prejudicial misconduct during petitioner's cross-examination; (C) retained attorney Miller rendered ineffective assistance of counsel prior to trial and his associate Nicholson rendered ineffective assistance of counsel at trial; (D) attorney Miller abandoned petitioner; (E) court appointed attorney Daly provided ineffective assistance of counsel at petitioner's motion for a new trial; and (F) the convictions were obtained by the prosecutor's use of false testimony by victim Alarcon.

V.  DISCUSSION

A.      Suppression of Evidence Prior to the Preliminary Hearing

In *Brady v. Maryland*, the United States Supreme Court held that the suppression before trial of requested evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  373 U.S. 83 (1963).  The *Brady* duty to disclose applies to exculpatory evidence as well as evidence that could be used to impeach the government's witnesses.  *United States v. Bagley*, 473 U.S. 667, 676 (1985).

For his first ground, petitioner contends that the prosecution suppressed evidence prior to the preliminary hearing.  In particular, petitioner refers to a report taken at the scene by a Sacramento Fire EMT responder and a physician's emergency room report from Alarcon's medical records.  (Pet's Ex. 4 & 5.)  Petitioner asserts that these reports show that Alarcon exaggerated or lied at the preliminary hearing regarding the extent of the injuries he suffered. Petitioner also contends that Alarcon had a criminal record of which the defense was not informed and that additional criminal charges were pending against him prior to and during the trial.  Petitioner argues that the suppressed evidence could have been used to impeach Alarcon's testimony at the preliminary hearing.  Petitioner contends that the failure of the prosecutor to

1  disclose this information prior to the preliminary hearing rendered the ensuing commitment order

2  illegal.[3]

3          On habeas corpus review, the Sacramento County Superior Court denied this

4  claim, finding that petitioner had waived any issue as to errors or irregularities in the preliminary

5  hearing by not filing a motion to dismiss.  (06F02061 opinion[4] at 1.)  The superior court also

6  noted that petitioner failed to show that the alleged errors implicated his right to a fair trial since

7  the documents were provided to defense counsel prior to trial.  *Id.*

8          Petitioner cites no authority from the United States Supreme Court, or the Ninth

9  Circuit, requiring that *Brady* material be disclosed prior to a preliminary hearing, as opposed to

10 later in the pretrial proceedings.  Although petitioner repeatedly refers to the evidence at issue as

11 exculpatory, no actual exculpatory value is apparent from review of the documents.  (Pet's Ex. 4

12 & 5.)  If anything, the medical reports contained only impeachment information.  The United

13 States Supreme Court has specifically held that *Brady* does not require the disclosure of

14 impeachment information prior to entry of a guilty plea.  *Ruiz*, 536 U.S. 622, 629 (2002).  It

15 necessarily follows that the withholding of impeachment information prior to a preliminary

16 hearing is also not a *Brady* violation.  As noted by Justice Thomas, "[t]he principle supporting

17 *Brady* was 'avoidance of an unfair trial to the accused.'" *Ruiz*, 536 U.S. at 634 (Justice Thomas,

18 concurring).  That concern is not implicated at the preliminary hearing stage.

19         In this case, it is undisputed that the defense received the two reports at issue

20 before trial commenced.  On the other hand, petitioner alleges that the prosecution *never*

21 disclosed information that Alarcon had a criminal record or that criminal charges were then

22 pending against him.  The crux of petitioner's argument in this regard is that the prosecution had

23 a duty to discover that its witness had a criminal history.

24 _____

25    [3] Petitioner also alleges that his attorney provided ineffective assistance in failing to file a motion to dismiss on this ground.  This allegation is discussed in subsection C(e), *infra*.

26    [4] Lodged document 5.

1    "When the state decides to rely on the testimony of [ ] a witness, it is the state's

2    obligation to turn over all information bearing on that witness's credibility." *Carriger v.*

3    *Steward*, 132 F.3d 463, 480 (9th Cir. 1997) (citing *Giglio v. Unites States*, 405 U.S. 150, 154

4    (1972)).  In addition, an "individual prosecutor has a duty to learn of any favorable evidence

5    known to the others acting on the government's behalf in the case, including the police." *Kyles*

6    *v. Whitley*, 514 U.S. 419, 437-38 (1995).

7            Some Circuit Courts of Appeal have found a duty under *Brady* to learn of

8    impeachment evidence, at least with respect to key witnesses.  *See United States v. Perdomo*, 929

9    F.2d 967 (3rd Cir. 1991); *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980).  In *Perdomo*, the

10   Third Circuit found a *Brady* violation when the government failed to check the local criminal

11   records for information concerning its key witnesses.  *Perdomo*, 929 F.2d at 970.  In *Auten*, the

12   Fifth Circuit found a *Brady* violation when the prosecutor chose not to run a search on one of its

13   key witnesses because of the brief time before trial.  *Auten*, 632 F.2d at 481.  In both cases, the

14   Courts of Appeal held that the first element of a *Brady* violation was established because the

15   government intentionally failed to seek out information readily available to it.  On the other hand,

16   in *United States v. Young*, 20 F.3d 758 (7th Cir. 1994), the Seventh Circuit found that knowledge

17   of a witness's full criminal history is not imputed just because the prosecutor could have

18   obtained the criminal records.  *Id*. at 764.

19           In this case, there is no evidence that anyone involved in petitioner's case knew

20   that Alarcon had criminal convictions.  Petitioner is only entitled to habeas corpus relief if the

21   state court's decision "was contrary to, or involved an unreasonable application of, clearly

22   established Federal law, as determined by the Supreme Court of the United States."  Given the

23   absence of Supreme Court precedent and the different rules set forth in the Circuit Courts of

24   Appeal, it cannot be said that Supreme Court law clearly establishes that the prosecution was

25   required to discover whether Alarcon had a criminal history.

26   /////

1    In any event, petitioner's allegations regarding Alarcon's alleged criminal history

2  are too speculative to warrant relief.  Under California law, a witness may be impeached with a

3  criminal record only in cases where the offense in question is one of "moral turpitude."  *People v.*

4  *Wheeler*, 4 Cal.4th 284, 296 (1992).  Here, petitioner merely speculates that Alarcon might have

5  had convictions for offenses relating to moral turpitude.[5]  But factual allegations, rather than

6  conclusions or speculation, are required.  *See Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir.

7  1970).  Petitioner is not entitled to relief on his claim that the prosecution suppressed evidence in

8  violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

9    B.    Prosecutorial Misconduct during Cross Examination

10    Petitioner testified that he was taking a cab home from the airport because he had

11  missed his flight.  (RT at 353; 392.)  During cross examination, the prosecutor asked petitioner,

12  "Isn't it in fact true that you were actually thrown off the plane for being intoxicated?"  (RT at

13  392.)  The defense's objection to the question was sustained.  (RT at 392.)

14    During a short recess outside the presence of the jury, the defense moved for a

15  mistrial, arguing that the prosecutor had provided no witnesses or discovery regarding petitioner

16  being thrown off a plane and that the inquiry itself was inflammatory.  (RT at 393.)  The

17  prosecutor stated that she obtained the information from Rostami, who had obtained the

18  information from his dispatch center.  (RT at 394.)  When court resumed, the jury was instructed

19  to disregard the last question:

20         THE COURT: ...all parties are present.  I must speak with you
           about something now, ladies and gentlemen.  The last statement of
21         the prosecutor before the objection was made, when we recessed, is
           stricken from the record.  You must strike it from your minds, treat
22         it as though you'd never heard it.

23  /////

---

25    [5] It is worth noting that the superior court found, on habeas corpus review, that two of the
    three case numbers of the criminal cases allegedly pending against Alarcon were invalid, while
    the third involved a 1989 misdemeanor crime which was not a crime of moral turpitude.
26  (06F02061 opinion at 4.)

1          As I told you before, the statements of counsel are not evidence
           and you're not to consider them as evidence.
2
3          There's no evidence to -- with regard to the statement that was
           made, no evidence whatsoever before you.  You must strike that
           statement from you minds and not let it interfere in any way with
4          your judgment in this case.

5          Now, is there anyone who is unable to do that?  If there's anyone
           who's unable to strike it from your minds and not let it interfere
6          with your judgment in any way, is there anyone who cannot do
           that, please raise your hand.
7
           (No Response).
8
           THE COURT: I see no response.  Thank you.  You may proceed,
9          Ms. Becker.

10   (RT at 397-98.)

11          Petitioner contends that the prosecutor's question was especially inflammatory

12   due to the proximity in time to the one year anniversary of the events of September 11, 2001.  In

13   his second ground for relief, he contends that his rights to due process, confrontation, and a fair

14   trial were violated.

15          The California Court of Appeal, Third District, applied state law to deny this

16   claim, reasoning that even if the question was improper, it was not a pattern of egregious

17   conduct, and did not amount to bad faith because it was intended to elicit relevant evidence as to

18   petitioner's level of intoxication or his credibility.  (C043574 opinion at 14.)  In addition, the

19   state appellate court held, the trial court's admonition and subsequent instruction to the jurors

20   cured any potential error, thus the trial court did not abuse its discretion denying the mistrial due

21   to the prosecutor's question.  (*Id*. at 15.)

22          The standard of review for a claim of prosecutorial misconduct on writ of habeas

23   corpus is the narrow one of due process.  *Darden v. Wainwright*, 477, U.S. 168, 181 (1986).  A

24   prosecutor's error or misconduct does not, per se, violate a petitioner's constitutional rights.  *See*

25   *Jeffries v. Blodgett,* 5 F.3d 1180, 1191 (citing *Darden*, 477 U.S. at 181 and *Campbell v.*

26   *Kincheloe*, 829 F.2d 1453, 1457 (9th Cir. 1987)).  A criminal defendant's due process rights are

9

1   violated only if the error or misconduct renders the trial fundamentally unfair. *Darden*, 477 U.S.

2   at 181.  The question to be resolved is "whether the prosecutor's remarks 'so infected the trial

3   with unfairness as to make the resulting conviction a denial of due process.'"  *Hall v. Whitley*,

4   935 F.2d 164, 165 (9th Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

5   (1974).  Relief is limited to cases in which the petitioner can establish that the misconduct

6   resulted in actual prejudice. *Johnson v. Sublett*, 63 F.3d 926, 930 (1995) (citing *Brecht v.

7   Abrahamson*, 507 U.S. 619, 637-38).  Put another way, prosecutorial misconduct violates due

8   process when it has a substantial and injurious effect or influence in determining the jury's

9   verdict.  *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

10          In this instance, due to the overall strength of the prosecution's case, it is evident

11  that the prosecutor's single improper question did not have a substantial and injurious effect or

12  influence in determining the jury's verdict.  There was ample evidence of guilt with respect to the

13  charges of conviction, which included recklessly driving under the influence and causing bodily

14  injury, assault with a deadly weapon with personal infliction of great bodily harm, hit and run

15  causing serious and permanent injury, and simple assault.

16          Rostami testified that petitioner threw big, round, rocks at him at the apartment

17  complex and that the rocks came close to hitting him.  (RT at 119-120.)  Eyewitness Rosos also

18  testified that petitioner threw softball size cobblestones at Rostami outside of the apartment

19  complex.  (RT at 58-60.)  Rosos saw petitioner leaving the apartment complex in his white van

20  and followed him to the 7-11.  (RT at 63-64, 66.)  Rosos witnessed petitioner's vehicle hit a pole,

21  run a red light, enter the 7-11 parking lot, hit Alarcon and pin him against the wall, back up,

22  leave the parking lot, and speed away. (RT at 63-69).  Petitioner was also identified as the

23  individual who hit Alarcon by an employee of the 7-11.  (RT at 227-228.)

24          Alarcon testified that he was standing at a pay phone when he turned and made

25  eye contact with petitioner, who was in the driver's seat of a van.  (RT at 190.)  The van pulled

26  towards Alarcon, accelerated over a parking block, hit him, and then drove away.  (RT at 190-

1   191.)  Two arresting officers from the Sacramento Police Department testified that petitioner

2   displayed objective signs of intoxication including an odor of alcohol, impaired speech, and

3   staggering or stumbling.  (RT at 240-41; 256.)  Petitioner refused a field sobriety test.  (RT at

4   241.)  A forced blood draw was administered (RT at 244) and his blood alcohol content was

5   determined to be .30.  (RT at 305.)

6          Dr. Robinson of Kaiser Hospital testified that he treated Alarcon three days after

7   the incident.  (RT at 149, 155.)  The leg was not fractured (RT at 156), but Alarcon had sustained

8   a "quadriceps muscle contusion," or, in other words, a "crush and bruise injury" in his right thigh

9   area.  (RT at 150.)  Dr. Robinson testified that it was the most extensive crush injury of that type

10  that he had seen in his experience working at Kaiser Hospital.  (RT at 153.)  After three months,

11  the injury had improved some, however Dr. Robinson concluded at that time that no further

12  progress would be made and that the resulting loss of strength to the leg was permanent.  (RT at

13  152-153.)

14         Given this evidence and the overall strength of the prosecution's case, the

15  prosecutor's single unanswered question about whether petitioner was removed from an airplane

16  for being intoxicated did not have a substantial and injurious effect or influence in determining

17  the jury's verdicts.  This claim fails because petitioner cannot establish the element of actual

18  prejudice.

19         C.     Constructive Denial of Counsel/ Ineffective Assistance of Trial Counsel

20         For his next ground, petitioner raises numerous allegations of constructive denial

21  of counsel prior to and during trial pursuant to *United States v. Cronic*, 466 U.S. 648 (1984) or,

22  in the alternative, ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466

23  U.S. 668 (1984).

24         The Sixth Amendment guarantees a criminal defendant the effective assistance of

25  counsel.  A showing of ineffective assistance of counsel has two components.  First, a petitioner

26  must show that, considering all the circumstances, counsel's performance fell below an objective

11

1  standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  After a

2  petitioner identifies the acts or omissions that are alleged not to have been the result of

3  reasonable professional judgment, the court must determine whether, in light of all the

4  circumstances, the identified acts or omissions were outside the wide range of professionally

5  competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  In assessing an

6  ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's

7  performance falls within the 'wide range of professional assistance.'"  *Kimmelman v. Morrison*,

8  477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at 689).  In addition, there is a strong

9  presumption that counsel "exercised acceptable professional judgment in all significant decisions

10  made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

11        The second factor required for a showing of ineffective assistance of counsel is

12  actual prejudice caused by the deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice

13  is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

14  result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is "a

15  probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Williams*, 529 U.S.

16  at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

17        The Supreme Court has presumed prejudice in Sixth Amendment right to counsel

18  cases where there are "circumstances that are so likely to prejudice the accused that the cost of

19  litigating their effect in a particular case is unjustified."  *United States v. Cronic*, 466 U.S. 648,

20  658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). *Strickland*, *Cronic*, and the cases that followed

21  *Cronic* made clear that this exception is limited to the "complete denial of counsel" and

22  comparable circumstances, including:  (1) where a defendant "is denied counsel at a critical stage

23  of his trial"; (2) where "counsel entirely fails to subject the prosecution's case to meaningful

24  adversarial testing"; (3) where the circumstances are such that "the likelihood that any lawyer,

25  even a fully competent one, could provide effective assistance is so small that a presumption of

26  prejudice is appropriate without inquiry into the actual conduct of the trial"; and (4) where

1    "counsel labors under an actual conflict of interest." *Visciotti v. Woodford*, 288 F.3d 1097, 1106

2    (9th Cir. 2002) (quoting *Cronic*, 466 U.S. at 659-61, 662 n.31), reversed on other grounds by

3    *Woodford v. Visciotti*, 537 U.S. 19 (2002).

4          In this case, petitioner claims that he retained attorney Russell Miller to personally

5    handle his criminal case, but that Miller unexpectedly assigned the case to be tried by Dan

6    Nicholson, Miller's associate.  Nevertheless, petitioner was represented by counsel at all relevant

7    times and did not suffer a complete denial of counsel or any comparable circumstances.  The

8    prejudice inquiry of petitioner's 16 separate allegations (designated in a-q in the petition,

9    excluding the letter h) will thus be analyzed under the standard set forth in *Strickland*, 466 U.S.

10    at 693-94.

11
12          a.  Attorney Miller failed to investigate, file discovery motions, subpoena medical records, and convey plea offers.

13          Petitioner's allegations that attorney Miller failed to investigate, file discovery

14    motions, and subpoena medical records are conclusory and unsupported by specific factual

15    allegations.  Such allegations fail to demonstrate that trial counsel's performance fell below an

16    objective standard of reasonableness, or that prejudice resulted.  *See Jones v. Gomez*, 66 F.3d

17    199, 204 (9th Cir. 1995) (conclusory allegations that counsel provided ineffective assistance "fall

18    far short of stating a valid constitutional violation" (*citing James v. Borg*, 24 F.3d 20, 26 (9th Cir.

19    1994); *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th cir. 1970) ("[a]llegations of fact, rather

20    than conclusions, are required").

21          Petitioner has explained his allegation that Miller failed to inform him of two plea

22    offers made by the prosecution.  At the conclusion of trial, the defense made a motion for a new

23    trial, and an evidentiary hearing was held.  The prosecutor stated that she had made two plea

24    offers: one prior to the preliminary hearing for three years, and another after the preliminary

25    hearing for six years.  (RT at 552, 555.)  Petitioner testified that Miller had not advised him of

26    either offer, but that he would have accepted the first offer for three years.  (RT at 569.)  In

1  contrast, Miller testified that he recalled advising petitioner of a first offer of four years and four

2  months, and a second offer of six years, but that petitioner declined both, indicating he was not

3  interested in any offer that would send him to state prison.  (RT at 574-75.)  The trial court found

4  Miller to be credible and determined that Miller had in fact communicated two offers to

5  petitioner but that petitioner was unwilling to accept an offer that would send him to state prison.

6  (RT at 589-90.)  The trial court concluded that petitioner failed to establish deficient performance

7  and prejudice and denied the motion for a new trial.

8          On direct appeal, the state appellate court rejected petitioner's claim of ineffective

9  assistance of counsel based on Miller's alleged failure to communicate plea offers:

10         Although there was conflicting testimony, the preponderance of the
           evidence does not show Miller's performance was deficient.  The
11         trial court heard the testimony and observed the witnesses, and it
           concluded Miller's testimony was credible.  That evidence shows
12         Miller's testimony was credible.  That evidence shows Miller's
           performance satisfied an objective standard of reasonableness.  He
13         communicated each plea offer to defendant immediately and
           complied with defendant's wishes not to accept a state prison term.
14         Even near the eve of trial, Miller fought to retrieve the earlier offer
           of four years four months for his client, but defendant still refused
15         the offer.  Miller's performance satisfied an objective standard of
           reasonableness under the prevailing norms of practice.
16
           Even if we conclude Miller's performance was deficient, we still
17         would find against defendant on this issue because he failed to
           establish prejudice, i.e., acceptance of the offer by defendant and
18         approval of the offer by the court... [¶] A defendant's self-serving
           statement, made after trial, that he would have accepted the offer
19         had competent advice been given, is alone insufficient to fulfill the
           defendant's burden of proving prejudice, and must be corroborated
20         independently by objective evidence.

21         Defendant failed to establish he would have accepted the proffered
           plea bargains had he actually and accurately been informed of
22         them.  Defendant admitted he would not have accepted the six-year
           term because it included a second strike.  Moreover, defendant's
23         statement he would have accepted the three-year term had it been
           offered occurred after the fact, is self-serving, and alone is
24         insufficient to establish prejudice.  Furthermore, the trial court
           heard contrary testimony from defense counsel that defendant "was
25         not interested in any offer which would send him to state prison."

26         Defendant also failed to establish the trial court likely would have

1

2    approved a three-year prison sentence.  Penal Code section 1192.7,
     subdivision (a), prohibits plea bargaining "in any case in which the
     indictment or information charges... any offense of driving while
3    under the influence of alcohol... unless there is insufficient
     evidence to prove the people's case, or testimony of a material
     witness cannot be obtained, or a reduction or dismissal would *not*
4    result in a substantial change in sentence."

5    This statute prohibits the proffered plea bargain of a three-year
     prison sentence because this case involves a drunk driving offense
6    with sufficient evidence to prove the offense as demonstrated at
     trial, and because the plea would have substantially reduced the
7    sentence.  The application of Penal code section 1192.7 renders the
     proffered plea bargain illegal, so we must presume the trial court
8    would have rejected the plea bargain.

9    By not proving by a preponderance of evidence Miller's
     performance was deficient, defendant would have accepted the
10   offers had they been made to him, and the court would have
     approved the agreement, defendant failed to establish ineffective
11   assistance of counsel at the plea bargaining stage.

12   (C043574 opinion at 8-9.)

13          While petitioner's allegations that Miller failed to advise him of two plea offers

14   would, if true, demonstrate that counsel's performance fell below an objective standard of

15   reasonableness, the state appellate court correctly found that petitioner has not satisfied the

16   prejudice inquiry.  "In order to prove prejudice where counsel fails to inform the petitioner about

17   a plea offer, the petitioner must prove there is a reasonable probability that he would have

18   accepted the offer. *Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997) (rejecting ineffective

19   assistance claim without evidentiary hearing because there was no reasonable probability that, at

20   time of plea offer, the petitioner would have agreed to its terms, despite his self-serving claim

21   that he would have).  Here, petitioner has no objective evidence to support his claim of prejudice.

22   To the contrary, Miller testified that petitioner was not interested in any deal that would send him

23   to state prison, and the trial court found this testimony to be credible.  Petitioner's statement that

24   he would have accepted the plea offer is self-serving and by itself, does not establish a reasonable

25   probability that he would have done so but for Miller's alleged failure to advise him of the offer.

26   *See Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (reasonable probability must be

1 established through objective evidence; self-serving statement made years after trial is

2 insufficient basis upon which to find ineffective assistance of counsel on this basis).

3        The California Court of Appeal's rejection of petitioner's ineffective assistance of

4 counsel claim based on Miller's alleged failure to convey plea offers is not contrary to, or an

5 objectively unreasonable application of any clearly established federal law.  Nor is it an

6 unreasonable determination of the facts in light of the evidence presented in the state court

7 proceeding.

8        b.  Attorney Miller abandoned petitioner's defense.

9        As set forth above, petitioner claims that he retained Miller to personally handle

10 his criminal case, but that Miller unexpectedly assigned the case to be tried by Nicholson,

11 Miller's associate.  Since this particular allegation is the sole basis for petitioner's fourth ground

12 for relief, it will be discussed *infra* in subsection D.

13        c.  Attorney Nicholson had a conflict of interest.

14        Petitioner contends that Nicholson asked him one day whether he had been

15 making payments for his legal services to Miller.  According to petitioner, he responded in the

16 affirmative and Nicholson said "well it looks like I'm doing the trial pro bono."  (Pet. at 23.)

17 Petitioner contends that Nicholson was not being paid for his work on the case and that this

18 constituted a conflict of interest in the representation.

19        Under the Sixth Amendment, a criminal defendant has the right to representation

20 free from any conflicts of interest.  *Strickland*, 466 U.S. at 692.  Because petitioner raised no

21 objection at trial, "[i]n order to establish a violation of the Sixth Amendment [based on a conflict

22 of interest, he] must demonstrate that an actual conflict of interest adversely affected his lawyer's

23 performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).  If this standard is met, prejudice

24 will be presumed.  *Id*. at 349-50.  But petitioner must show that an actual conflict affected

25 counsel's performance, as opposed to a mere theoretical division of loyalties.  *United States v.*

26 *Wells*, 394 F.3d 725, 733 (9th Cir. 2005) (citations and internal quotations omitted).

1    The Ninth Circuit has previously recognized that an ineffective assistance of

2    counsel claim based on a conflict of interest may lie, in theory, where an attorney's financial

3    interests are in conflict with his client's interests.  *See United States v. Hearst*, 638 F.2d 1190,

4    1193-94 (9th Cir. 1980) (allegation that attorney acted contrary to client interests based on book

5    contract stated a claim), *cert. denied*, 451 U.S. 938 (1981).  Pro bono arrangements, however, do

6    not, without more, require Sixth Amendment scrutiny.  *Williams v. Calderon*, 52 F.3d 1465, 1473

7    (9th Cir. 1995).  Here, petitioner has not stated any additional facts that demonstrate that an actual

8    conflict of interest adversely affected Nicholson's performance.  Even accepting petitioner's

9    allegation as true, he has failed to state a valid claim.

10          d.  Attorney Nicholson failed to seek a continuance prior to trial.

11    Petitioner alleges that Nicholson received petitioner's case "only days before trial"

12    and that he "did no pre-trial work-up."  (Pet. at 14.)  Petitioner contends that Nicholson should

13    have sought a continuance to conduct additional investigation and preparation.  This particular

14    allegation overlaps with several others regarding Nicholson's alleged deficient performance prior

15    to trial.  (See subsections e-q, *infra*.)  Within the other allegations, petitioner speculates but fails

16    to demonstrate exactly what the additional investigation or preparation would have accomplished

17    and how the outcome of his case would have been positively affected.  Like the other allegations,

18    petitioner's contention that Nicholson should have sought a continuance to conduct additional

19    investigation or preparation lacks necessary factual details and cannot be a basis for habeas corpus

20    relief.  *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995)

21

22          e.  Attorney Nicholson failed to file the correct motion to dismiss after the
       preliminary hearing.

23    Prior to commencement of trial, Nicholson made an unsuccessful motion pursuant

24    to Cal. Penal Code § 995.  Nicholson argued that the information should be dismissed because

25    insufficient evidence at the preliminary hearing supported the charge of assault with a deadly

26    weapon and the circumstance of great bodily injury.  Petitioner alleges that Nicholson should have

1  instead filed a non-statutory motion to dismiss alleging that the prosecutor had improperly

2  suppressed exculpatory evidence, specifically, the medical reports discussed *supra* in subsection

3  A.  As to this allegation, the Sacramento County Superior Court reasoned:

> This "evidence" consists of reports by emergency personnel that
> responded to the incident.  First, there is no evidence that the
> prosecutor had actual or constructive possession of the fire
> department report, Exhibit 4.  Although petitioner has shown that
> the prosecutor sought and obtained medical records from Kaiser via
> subpoena, Petitioner has not shown that the fire department report
> was part of the subpoenaed Kaiser records.  Petitioner also claims
> that the medical report of Dr. Rowe was exculpatory.  Dr. Rowe's
> report apparently was part of the records obtained from Kaiser.
> However, Petitioner's claim that the report is exculpatory because it
> contradicts Alarcon's testimony is unsupported.  The report shows
> that Alarcon's knee had abrasions, effusion, pain, and tenderness.
> The notes also suggest that an x-ray might be necessary regarding a
> possible tibial fracture and recommended a consultation with an
> orthopedic specialist.  The report further states that the injury was
> due to trauma and that Alarcon was unable to bear weight on the
> leg.  (See Exhibit 5.)  None of this appears to be exculpatory in
> relation to Alarcon's testimony at the preliminary hearing that his
> leg felt numb, was smashed, the skin was ripped and the leg was
> bleeding.  (See Exhibit 3.)  Since Petitioner has not shown that the
> evidence was exculpatory, he cannot show that trial counsel should
> have moved to dismiss the information for a Brady violation.

16  (06F02061 opinion at 3.)

17        For the reasons described above by the state superior court, and the reasons

18  additionally set forth in subsection A, the medical reports at issue were not exculpatory; if

19  anything, they contained only impeachment information.  It is undisputed that the defense

20  received the medical reports at issue before trial commenced, accordingly, there was no *Brady*

21  violation (see discussion in subsection A, *supra*) and no basis for counsel to file a motion to

22  dismiss the information on that ground.  *See James*, 24 F.3d at 27 (counsel has no duty to make a

23  futile motion).

24  /////

25  /////

26  /////

1

2     f.  Attorney Nicholson failed to interview or call as witnesses Sacramento Fire EMT personnel.

3    As set forth in subsection A, Sacramento Fire EMT personnel responded to the

4 scene, spoke to Alarcon, and created a report which was provided to the defense sometime after

5 the preliminary hearing and before trial.  Petitioner contends that Nicholson failed to read or

6 consider this report and further failed to interview or call as a witness any of the emergency

7 responders who were at the scene.

8     "Counsel has a duty to make reasonable investigations or to make a reasonable

9 decision that makes particular investigations unnecessary."  *Wiggins v. Smith*, 539 U.S. 510, 521

10 (2003) (citing *Strickland*, 466 U.S. at 690-90).  At the same time, "counsel need not interview

11 every possible witness to have performed proficiently."  *Riley v. Payne*, 352 F.3d 1313, 1318 (9th

12 Cir. 2003).  In this case, even assuming that petitioner could show that Nicholson failed to

13 interview or call EMT personnel to testify and that such failure was unreasonable, he has made no

14 showing of prejudice.  In order to demonstrate prejudice, a claim of failure to interview or call

15 witnesses must show what the interview would have obtained and how the testimony might have

16 changed the outcome of the case.  *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1989).

17 Here, petitioner has not alleged, nor is it apparent from the report, what would have been obtained

18 from an interview of the first responders, what testimony they could have given, or how the

19 outcome of the case would have been affected.

20

21     g.  Attorney Nicholson failed to interview or call as a witness Dr. Rowe, Kaiser emergency room physician.

22    Petitioner alleges that Nicholson also failed to interview or call as a witness Dr.

23 Rowe, Kaiser emergency room physician. Once again, petitioner's allegations regarding

24 Nicholson's alleged failure to interview or call a witness are insufficient, because he has failed to

25 allege what would have been discovered in an interview with Dr. Rowe, what testimony Dr. Rowe

26 would have given at trial, and how such testimony would have changed the outcome of the case.

1        i.[6]  Attorney Nicholson failed to adequately prepare, read, and consider medical
         documents which could have been used to impeach Alarcon's trial testimony.

2

3        Petitioner alleges that Nicholson's performance was deficient when he failed to

4   adequately cross-examine and impeach Alarcon's testimony with medical documents,

5   presumably, the documents at issue in subsection A, *supra*.  Petitioner contends that counsel could

6   have shown that Alarcon aggravated his own injuries in furtherance of an insurance fraud scheme

7   or civil lawsuit.  The Sacramento County Superior Court found, in general, that petitioner's

8   allegations about Nicholson's alleged lack of preparation were lacking in factual detail and

9   therefore insufficient.  (06F02061 opinion at 3.)

10       Trial counsel's decision on whether or how to best impeach a witness is generally

11  deemed a strategic one, shielded by the *Strickland* presumption that counsel acted reasonably.

12  *United States v. Lindsay*, 157 F.3d 532, 535-36 (7th Cir. 1998), *but see Reynoso v. Giurbino*, 462

13  F.3d 1099, 1114 (9th Cir. 2006) (failure to impeach crucial witnesses constituted ineffective

14  assistance of counsel).  In this case, petitioner has presented nothing to rebut the presumption that

15  counsel's decisions were reasonable.

16       The medical documents at issue, which contain the notations and statements of an

17  emergency responder and an emergency room physician, do not contradict Alarcon's trial

18  testimony.  For example, petitioner points out that the emergency responder's statement does not

19  mirror Alarcon's trial testimony because it does not indicate that Alarcon claimed that petitioner

20  pinned him against the wall for 3 minutes while smiling or giggling at him.  The absence of this

21  information in a report, however, does not contradict Alarcon's testimony.  Likewise, petitioner

22  contends that the officer did not sufficiently describe the injuries he observed on Alarcon, except

23  to note that there was a complaint of pain to the right knee and that it was unknown if the knee

24  was broken.  Petitioner contends that a trained accident investigation officer would have made a

25

26       [6] The petition contained no allegation lettered h.

1  different notation had Alarcon sustained the type of injury he later described at trial.  Again,

2  however, petitioner's allegations fall short of demonstrating any information which counsel could

3  have used to meaningfully impeach Alarcon's trial testimony.

4          Moreover, as discussed *supra*, in section B, there was ample evidence of

5  petitioner's guilt, including eyewitness testimony and the testimony of the physician who

6  diagnosed Alarcon's injury as permanent.  Thus, even assuming, for the sake of argument, that

7  Alarcon had been impeached with the information contained in the medical reports, and it had

8  been shown that Alarcon exaggerated his injuries, there is no reasonable probability that the result

9  of the proceeding would have been different.

10

11          j.  Attorney Nicholson failed to investigate and object to photographs purporting to
            show Alarcon's injuries.

12          During Alarcon's direct examination, the prosecutor displayed to him what had

13  been marked for identification as Court's exhibits 3, 4 and 6, which Alarcon subsequently

14  identified as photographs of his leg, taken by his wife approximately one day after the incident

15  occurred.  (RT at 200-01.)  Petitioner contends that the photographs should not have been allowed

16  into evidence without testimony from Alarcon's wife or the medical personnel who treated

17  Alarcon.

18          "To authenticate a photograph a foundation must be laid by showing that the

19  picture is a faithful representation of the objects or persons depicted.  The showing must be made

20  by a competent witness who can testify to personal knowledge of the correctness of the

21  representation."  *People v. O'Brien*, 61 Cal.App.3d 766, 781 (1976).  In this case, the photographs

22  at issue were properly authenticated as to time and place by Alarcon, who was the subject and

23  who was present when they were taken.  Petitioner has not shown any basis for an objection by

24  defense counsel.

25          Petitioner also complains of Nicholson's failure to object to the admission of

26  photographs of a cement ashtray that was in front of the 7-11 and which was struck by petitioner's

van at the same time Alarcon was hit.  During the testimony of officer McCoy of the Sacramento

Police department, the prosecutor showed him what had been marked for identification as court's

exhibits 10 and 13.  (RT at 285-86.)  Officer McCoy recognized the photos as depicting an ashtray

near the payphones in front of the 7-11, but did not identify either as being in the same condition

as when he saw it on the day of the incident.  (RT at 286-87.)  After Officer McCoy failed to

identify court's exhibit 10, the prosecutor did not attempt to publish it to the jury.  (RT at 287.)

The prosecutor did attempt to publish court's exhibit 13 to the jury, however, contrary to

petitioner's assertion, Nicholson did make an objection.  (RT at 288.)  After a discussion in

chambers which was held outside the presence of the jury and which was not transcribed, the

prosecutor moved on to other areas without attempting again to publish the photograph.

Petitioner admits that neither photograph of the ashtray was admitted into evidence. (See also RT

at 279.)  Nicholson's performance was thus not deficient in this regard.

      k.  Attorney Nicholson failed to visit the scene and failed to consult with an accident reconstruction expert.

      Petitioner's allegations that Nicholson failed to visit the scene and consult with an accident reconstruction expert are insufficient as he has failed to give any supporting evidence, other than speculation, including what information would have been obtained, and how the outcome of the trial would have been affected.  Petitioner's allegations that counsel would have discovered that Alarcon perjured himself in pursuit of a fraudulent civil lawsuit or insurance fraud scheme are also speculative, conslusory, and insufficient for habeas corpus relief.  *See Jones*, 66 F.3d at 204.

      l.  Attorney Nicholson failed to object when the prosecutor improperly vouched for the credibility of its witnesses.

      "The government may not vouch for the credibility of its witnesses, either by putting its own prestige behind the witness, or by indicating that extrinsic information not presented in court supports the witness' testimony..." *United States v. Simtob*, 901 F.2d 799, 805

(9th Cir. 1990).  Here, petitioner contends that the prosecutor improperly vouched for the credibility of witnesses during closing arguments.  The prosecutor argued:

> Now, those are the charges that the People have alleged against the defendant.  And it's up to you, the jury, to decide whether or not these allegations have been proven beyond a reasonable doubt.  [¶] Now, you are the ones that get to decide whether or not you believe those witnesses that sat up in that chair. [¶] And again, the law gives you a tool to determine that.  Gives you kind of a focus to determine, "Should I believe him or not?"  "Do I believe they're credible?" [¶] Well, all the witnesses that you heard last week, from Mr. Rosos, Mr. Rostami, Mr. Alarcon, the officers, the criminalist, and the phlebotomist, none of them have any bias or motive to lie.

(RT at 469.)  The prosecutor went on to recap the testimony given by each witness, stating again in various places that the witnesses had no reason to lie.

Petitioner's allegations in this regard are not supported in the record.  The prosecutor's statements did not constitute improper vouching.  The prosecutor did not express her own belief in the credibility of any witness, or imply that she knew of information not presented which supported their accounts.  Rather, the prosecutor summarized evidence that was actually admitted or not admitted during the trial and offered reasonable inferences therefrom: that the witnesses were telling the truth because they had no bias or motive to lie.  This is not improper vouching.

m.  Attorney Nicholson failed to investigate Alarcon's background.

Petitioner alleges that Nicholson failed to investigate Alarcon's background, however, once again, he has failed to show what information would have been obtained, and how it would have changed the outcome of the trial.  To the extent petitioner alleges that counsel could have learned that Alarcon had a criminal history, he has failed to demonstrate that Alarcon had any convictions for crimes of moral turpitude which could have been used as impeachment information.  (See subsection A, *supra*.)

/////

/////

1           n.  Attorney Nicholson failed to impeach Rosos's testimony.

2           At trial, Rosos testified that he saw petitioner pin Alarcon against the wall with the

3   vehicle.  (RT at 68.)  On cross-examination, Rosos testified that there was shrubbery

4   approximately one foot to one and a half feet tall in his line of sight, but that it did not obstruct his

5   view.  (RT at 85-86.)  Defense counsel also asked Rosos how far away he was:

6                    Q:  Okay.  About how far away?
                     A:  Uh, maybe from -- from where I'm sitting to the back wall there.
7                              MR. NICHOLSON: Your Honor, does the Court have --
                               THE COURT: About 30 -- about 30 or so feet.
8                              MR. NICHOLSON: I think that's about 30 yards, judge.  Do we
                               have a diagram?
9                              COURT ATTENDANT: No.
                               MR. NICHOLSON:   We don't?
10                             COURT ATTENDANT: No.
                               MR. NICHOLSON: Typically, we have those in each courtroom.
11                             COURT ATTENDANT: We do.
                               THE COURT: Let's see.  We don't have it?  Don't have a diagram.
12                             COURT ATTENDANT: No.  That's about forty feet from where
                               you are to the back door.
13                             THE COURT: About forty feet.  The jury can see what it is, it's
                               about forty feet.
14                             MR. NICHOLSON: Ok.

15  (RT at 86-86.)

16           Petitioner alleges that Rosos was actually 100 feet away and that his view was

17  obstructed by trees, shrubbery, and parked cars.  (Pet. at 16-17.)  Petitioner contends that

18  counsel's failure to impeach Rosos's testimony in this regard constituted ineffective assistance.

19           The Sacramento County Superior Court determined that petitioner was not entitled

20  to relief on this ground because the photographs and drawings he relied upon were not

21  authenticated or properly identified as accurate representations of the scene.  (06F02061 opinion

22  at 3.)  Even assuming, for the sake of argument, that the submitted drawings and photos accurately

23  depict the scene, petitioner's allegations are still insufficient.  For example, petitioner alleges that

24  Rosos testified that he was only 30 feet away, however Rosos did not give such testimony.

25  Rather, Rosos estimated the distance to be approximately equal to the distance from where he was

26  sitting at the time to the back of the courtroom.  Rosos did not give a numerical estimate of the

24

1    distance he described.  Moreover, Nicholson did elicit from Rosos on cross examination that there

2    was shrubbery in his line of sight, and this was marked on the diagram displayed to the jury.  (RT

3    at 85-86.)  Despite petitioner's argument, it is not evident from his allegations or the photographs

4    submitted whether the shrubbery actually obstructed Rosos's view.  Rosos testified, however, that

5    his view was not obstructed by the shrubbery.  (RT at 86.)  Petitioner has failed to demonstrate

6    that Nicholson could have successfully impeached Rosos's testimony in this regard.  Moreover,

7    given the substantial evidence of petitioner's guilt, as described in section B, there is no

8    reasonable likelihood that such impeachment, even if successful, would have affected the outcome

9    of the case.

10                 o.  Attorney Nicholson failed to impeach Alarcon's testimony.

11                 Petitioner's allegations that Nicholson failed to impeach Alarcon's trial testimony

12   have already been addressed.  (See i., *supra*.)

13
                     p.  Attorney Nicholson failed to prepare petitioner to testify and to consult with
14                       him to ensure critical defense testimony was elicited.

15                 At trial, petitioner testified in his own defense.  He testified that he did not hit

16   Alarcon, and that he saw Alarcon looking around as if to check for witnesses.  (RT at 372-73;

17   376.)  Petitioner contends that Nicholson failed to prepare and consult with him in order to ensure

18   that critical testimony was elicited.  Petitioner does not, however, describe the additional

19   testimony that he could have given or explain how it would have affected the outcome of the case.

20   Petitioner fails to explain how any preparation by counsel would have changed the effectiveness

21   of his testimony.  The allegations regarding Nicholson's alleged omissions are, once again,

22   insufficient.

23                 q.  Attorney Nicholson abandoned petitioner's defense by conceding guilt.

24                 Petitioner alleges that Nicholson conceded guilt during his closing argument,

25   admitting that petitioner hit and injured Alarcon.  The Sacramento County Superior Court

26   disagreed with his allegation:

1
2
3
4
5
6

> [A]lthough Petitioner argues that Nicholson conceded guilt, the referenced pages of defense counsel's closing argument only suggest that certain facts needed to be determined by the jury. Moreover, Nicholson's statements merely reflected the evidence that was presented at trial, which included victim Alarcon's testimony that he was in fact injured by Petitioner's vehicle running into him.  Reciting evidence that was admitted at trial does not constitute abandonment by counsel or a concession of guilt. Moreover, even if counsel were conceding guilt as to some of the offenses, conceding guilty is not *necessarily* ineffective assistance of counsel.

7  (06F02061 opinion at 2.)

8          The Supreme Court has emphasized the deference accorded to trial counsel in

9  making closing argument:

10
11
12
13
14
15

> ... counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage.  Closing arguments should "sharpen and clarify the issues for resolution by the trier of fact, but which issues to sharpen and how best to clarify them are questions with many reasonable answers... Judicial review of a defense attorney's summation is therefore highly deferential-- and doubly deferential when it is conducted through the lens of a federal habeas.

16  *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (internal citations omitted).  In the present case,

17  Nicholson's closing argument discussed in detail Alarcon's injuries, arguing that great bodily

18  injury and permanent serious injury had not been proved.  Nicholson also stated at one point that

19  petitioner probably hit the ashtray and that Alarcon "was probably stuck between the telephone

20  booth and the ashtray."  (RT at 492.)  Nicholson argued at length and in detail that, while Alarcon

21  apparently sustained some injury, it was not of the type or seriousness that he described at trial.  It

22  appears that Nicholson made a tactical decision not to deny that petitioner had hit and injured

23  Alarcon, at least to some extent.  Given the evidence presented in this case, such a tactical

24  decision was reasonable.  Petitioner is not entitled to relief for his allegation that Nicholson

25  conceded guilt.

26  /////

1      D.     Abandonment by Retained Counsel Miller

2          As set forth above, petitioner claims that he retained Miller to personally handle his

3 criminal case, but that Miller unexpectedly assigned the case to be tried by Nicholson, Miller's

4 associate, despite the fact that petitioner paid for his representation with checks payable directly to

5 Miller.  As to this allegation, the Sacramento County Superior Court reasoned that "Petitioner has

6 not shown that Miller agreed to personally handle Petitioner's case, including the trial.  Petitioner

7 was represented by Nicholson during the trial, so he was not 'abandoned' by counsel."

8 (06F02061 opinion at 2.)

9          Petitioner has indeed failed to show the existence of any agreement between

10 attorney Miller and himself.  In addition, he has cited no Supreme Court or Ninth Circuit law in

11 support of his claim.  Accordingly, the state superior court's rejection of this claim is not contrary

12 to, or an unreasonable application of, any clearly established federal law.

13

14      E.     Constructive Denial of Counsel/ Ineffective Assistance of Counsel at the Motion
          for a New Trial

15          After petitioner was convicted, the trial court appointed Kresta Daly to prepare a

16 motion for a new trial on petitioner's behalf.  Daly filed the motion, which was denied.  Petitioner

17 alleges that he was constructively denied counsel at his motion for a new trial (*United States v.*

18 *Cronic*, 466 U.S. 648 (1984)), or, in the alternative that he received ineffective assistance of

19 counsel.  (*Strickland v. Washington*, 466 U.S. 668 (1984)).  Since it is undisputed that petitioner

20 was represented by attorney Daly at the motion for a new trial, he did not suffer a "complete

21 denial of counsel" or any comparable circumstances.  Daly's performance will be analyzed under

22 the standard set forth in *Strickland*, 466 U.S. at 693-94.

23          Petitioner complains that Daly failed to investigate the majority of the issues he

24 identified for her and further complains that the two issues she did raise were inadequately

25 supported.  These allegations, however, like the allegations regarding trial counsel's alleged

26 omissions, are unsupported by any evidence in the petition.  As determined by the Sacramento

27

1  County Superior Court:

> 2 Petitioner complains that Daly's motion was full of conditional
> 3 statements and that Daly never did the investigation to show how
> trial counsel was incompetent.  Yet petitioner has not shown that
> 4 Daly was incompetent since he has not attached the evidence that
> Daly should have obtained to support the motion for a new trial.
> 5 Petitioner has not attached any medical records to show that
> Alarcon had a pre-existing knee injury; he had not attached any
> 6 evidence to show that Alarcon's injury was exaggerated or entirely
> false; there is no evidence that any expert could or would have
> 7 testified that Petitioner had a rising blood alcohol level, that the
> accident happened differently from that described by Alarcon, or
> 8 that the blood alcohol test results were inaccurate.  In the absence of
> such evidence, it cannot be said that Daly's failure to present
> 9 evidence to support the motion for new trial was unreasonable or
> prejudicial.

10  (060F02061 opinion at 6.)  Once again, petitioner's claim of ineffective assistance of counsel is

11  conclusory, unsupported, and not a sufficient basis for habeas corpus relief.

12       F.     Perjured Testimony

13       The knowing use of perjured testimony against a defendant to obtain a conviction

14  violates the Constitution.  *Napue v. Illinois*, 360 U.S. 264 (1959).  In order to succeed on such a

15  claim, a habeas petitioner must show that some testimony given was actually false, and that the

16  prosecutor was aware of the falsity.  *Morales v. Woodford*, 336 F.3d 1136, 1152 (9th Cir. 2003);

17  In addition, the false testimony must have been material.  *United States v. Zuno-Arce*, 339 F.3d

18  886, 889 (9th Cir. 2003).  Under *Napue*, false testimony is material, and therefore prejudicial, if

19  there is "any reasonable likelihood that the false testimony could have affected the judgment of

20  the jury."  *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (internal citation omitted).

21       For his sixth and final ground, petitioner contends that his convictions were

22  obtained by Alarcon's false testimony, including his testimony that petitioner made eye contact

23  with Alarcon before hitting him, that petitioner revved his engine, that Alarcon was on the

24  telephone with his wife, when he was really on the telephone with his extramarital girlfriend, that

25  Alarcon was unable to take pain medication, that petitioner's van pinned Alarcon for three

26  minutes, and that petitioner's vehicle impacted Alarcon at all.  Petitioner also claims that Alarcon

28

1    lied about his business losses and his ability to read and write English.

2          The Sacramento County Superior Court denied petitioner's claim regarding

3    Alarcon's alleged false testimony.  (06F02061 opinion at 7.)  The allegations relating to Alarcon's

4    business losses and ability to read and write English were denied because Alarcon did not testify

5    about these issues at petitioner's trial.  (*Id*.)  These issues were raised only in the civil matter

6    which did not affect petitioner's criminal case.  (*Id*.)  As to the other issues, the superior court

7    found that petitioner only provided evidentiary support relating to the issue of Alarcon being on

8    the phone with his wife and the issue of taking pain medication.  (*Id*.)  The other claims were

9    based on Alarcon's perceptions or otherwise not shown to be false.  (*Id*.)

10         As to the claims for which petitioner did provide evidentiary support, the superior

11   court likewise rejected them.  (06F02061 opinion at 7.)  The superior court found that the person

12   to whom Alarcon was talking at the time of the incident was not material.  (*Id*.)  The superior

13   court also found that petitioner had not shown that Alarcon's testimony relating to the pain

14   medication was materially false.  (*Id*.)  Petitioner alleged that Alarcon stated he was given pain

15   medication, but that he could not take the medication because it closed off his throat.  (*Id*.)  At

16   trial, Alarcon admitted he started to take medication until he had a bad reaction; his testimony

17   suggested that he was taking pain medication for a month after he was hurt.  (RT at 207.)

18   Portions of Alarcon's deposition testimony in the civil matter show that Alarcon had a different

19   adverse reaction to medication and his answers to interrogatories show he took ibuprofen,

20   Sulindac, Vicodin, and Darvocet.  (06F02061 opinion at 7.)  The superior court determined that

21   this did not establish that Alarcon's trial testimony was false.

22         The superior court concluded that petitioner had not shown Alarcon's testimony to

23   be materially false, or that there was a reasonable likelihood of a different result.  (*Id*.)  Indeed,

24   there is no reasonable likelihood that Alarcon's alleged false testimony affected the judgment of

25   the jury in this case.  The superior court's rejection of petitioner's false evidence claim is not

26   contrary to, or an unreasonable application of, any clearly established federal law.  Petitioner is

1   not entitled to relief.

2                                   VI.  CONCLUSION

3              For all the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

4   application for writ of habeas corpus be DENIED.

5              These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

7   days after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Such a document should be captioned

9   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within ten days after service of the objections.  The parties are advised

11  that failure to file objections within the specified time may waive the right to appeal the District

12  Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: November 30, 2009

                                               *Charlene H. Sorrentino*
14                                             _____
                                               CHARLENE H. SORRENTINO
15                                             UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26